## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT HANKINS,** | ) | **C.A. No. 09-182 Erie** |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **District Judge McLaughlin** |
| | ) | **Magistrate Judge Baxter** |
| **JEFFERY BEARD, et al.,** | ) | |
| **Defendants.** | ) | |

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

### I.  <u>RECOMMENDATION</u>

It is respectfully recommended that:

1.  The Commonwealth Defendants' Motion to Dismiss Amended Complaint, or in the Alternative, Motion for Summary Judgment [Document # 77] be granted in part and denied in part;

2.  The Fayette County Defendants' Motion to Dismiss [Document # 79] be granted in part and denied in part;

3.  Defendant Burnsworth's Motion to Dismiss [Document # 84] be granted, and that Defendant Burnsworth be dismissed from this case;

4.  The Motion to Dismiss filed on behalf of Defendants Poindexter and Sherbine [Document # 100] be granted, and that Defendants Poindexter and Sherbine be dismissed from this case; and

5.  Defendant Gregory Packaging's Motion to Dismiss [Document # 103] be granted, and that Defendant Gregory Packaging be dismissed from this case.

It is further recommended that:  (i) Defendants Sileo, Leskinen and Fike be dismissed from this case for Plaintiff's failure to serve them within 120 days of the filing of the Amended Complaint in accordance with Rule 4(m) of the Federal Rules of Civil Procedure; and (ii) Defendants Yates, Grandlund, Jolene B., Sutton, Ames, Delie, Corbett, Sherbine, and Poindexter be dismissed from this case due to Plaintiff's failure to mention them anywhere by name in the body of the Amended Complaint.

## II.    REPORT

### A.    Relevant Procedural History

On July 20, 2009, Plaintiff Robert Hankins, a prisoner incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion")[1], filed this civil rights action pursuant to 42 U.S.C. § 1983 against: (i) the Commonwealth of Pennsylvania ("Commonwealth") and various individuals employed by the Pennsylvania Department of Corrections ("DOC")(hereinafter collectively referred to as "Commonwealth Defendants"); (ii) several Fayette County public defenders, assistant district attorneys, and Fayette County Jail officials (hereinafter collectively referred to as "Fayette County Defendants"; (iii) Timmie Burnsworth, LPN ("Burnsworth"), a nurse at Fayette County Jail; (iv) Gloria Poindexter ("Poindexter"), and Rhonda Sherbine ("Sherbine"), Health Services' employees under contract to provide medical services to inmates at SCI-Forest; (v) Mayor James R. Sileo ("Sileo"); and (vi) Gregory Packaging, Inc. ("Gregory Packaging"), incorrectly identified by Plaintiff as "Gregory Packing, Inc." [Document # 3].

The Commonwealth Defendants employed by the DOC consist of: Jeffery Beard, the DOC's Secretary of Corrections ("Beard"); Cindy G. Watson, the DOC's Chief Grievance Officer ("Watson"); Margaret M. Gordon, R.D. the DOC's Clinical Dietician ("Gordon"); John S. Shaffer, PhD, Executive Secretary at the DOC ("J. Shaffer"); E.P. Bush, Acting Deputy for Centralized Services at SCI-Forest ("Bush"); Nelson Zullinger, identified as "Right-to-Know Official" ("Zullinger"); "Joseph D.," Hearing Examiner; E.M. Weaver, Hearing Examiner ("Weaver"); Timothy J. Mark, Chief Hearing Examiner ("Mark"); L.S. Kerns-Barr, Hearing Examiner ("Kerns-Barr"); Z. Moslak, Hearing Examiner ("Moslak"); Kerri Cross, Hearing Examiner ("Cross"); John Andrade, Hearing Examiner ("Andrade"); "Yates," Chief Grievance Official; Kristen P. Reisinger, Chief Grievance Official ("Reisinger"); Raymond Sobina, former

---

[1]

Plaintiff was formerly incarcerated at SCI-Forest in Marienville, Pennsylvania.

Superintendent at SCI-Forest ("Sobina"); Michael Barone, Deputy Superintendent at SCI-Forest ("Barone"); L.H. Heaster, Deputy Superintendent at SCI-Forest ("Heaster"); Kevin Dittman, Food Services Manager 1 at SCI-Forest ("Dittman"); Edward Heberling, Food Services Manager 2 at SCI-Forest ("Heberling"); Donald Skunda, CCHP at SCI-Forest ("Skunda"); Carol Kennedy, Grievance Coordinator at SCI-Forest ("Kennedy"); Kurt Grandlund, Deputy at SCI-Forest ("Grandlund"); Jolene B., R.D.H. at SCI-Forest ("Jolene"); Pamela Sutton, Dental Assistant at SCI-Forest"); John Ames, CFMM-III at SCI-Forest ("Ames"); Sergeant McKnight, a corrections officer at SCI-Forest ("McKnight"); "Whitehead," a corrections officer at SCI-Forest; S.S. Best, a corrections officer at SCI-Forest ("Best"); Joan Delie, CHCA at SCI-Forest ("Delie"); Deb Woodard, Commissary Supervisor at SCI-Forest ("Woodard"); "Miller," a corrections officer at SCI-Forest; S.Satterlee, Counselor at SCI-Forest ("Satterlee"); "Huapt," Unit Manager at SCI-Forest; Lt. Younkin, a corrections officer at SCI-Forest ("Younkin"); and P. McKissock, Hearing Examiner at SCI-Albion ("McKissock").

The Fayette County Defendants consist of the following: Gary Brownfield, Jr., Court Officer ("Brownfield"); George Barker, Court Officer ("Barker"); Ed Dunkard, incorrectly identified by Plaintiff as "Ed Denker," Court Officer ("Dunkard"); Mark Matthews, Court Officer ("Matthews"); Mike Zavada, incorrectly identified by Plaintiff as "Lt. Salvoda" ("Zavada"); Lawrence Chapman, Sr., incorrectly identified by Plaintiff as "Lt. Chaplyn" ("Chapman"); Larry Medlock, Warden at Fayette County Jail ("Medlock"); Barry Croftcheck, Assistant Warden at Fayette County Jail ("Croftcheck"); Jamee Waligura, Counselor at Fayette County Jail ("Waligura"); Thomas W. Shaffer, Esq., public defender ("T. Shaffer"); Jeffrey W. Whiteko, Esq., public defender ("Whiteko"); Michael J. Garofalo, Esq., public defender ("Garofalo"); Michelle Kelley, Esq., Assistant District Attorney ("Kelley"); and Eugene Grimm, Esq., Assistant District Attorney ("Grimm").

Plaintiff subsequently filed an Amended Complaint on October 22, 2009 [Document # 64], adding as Defendants Judge Steven P. Leskinen ("Leskinen"), Edward Fike ("Fike"); and

Tom Corbett ("Corbett"). Defendants Leskinen and Fike, as well as original Defendant Sileo, have never been served in this case, nor has any attorney entered an appearance on behalf of one or more of them.

On November 10, 2009, the Commonwealth Defendants filed a motion to dismiss amended complaint, or, in the alternative, motion for summary judgment, arguing that Plaintiff has failed to state a claim upon which relief may be granted. [Document # 77].

On November 13, 2009, the Fayette County Defendants filed a motion to dismiss, arguing that: (i) Plaintiff's claims against Defendants T. Shaffer, Whiteko, Garofalo are barred because they are not state actors and/or are entitled to absolute immunity; (ii) Plaintiff's claims against Defendants Grimm and Kelley are barred by absolute prosecutorial immunity; and (iii) Plaintiff has failed to state a claim upon which relief may be granted against the Fayette County Jail Defendants. [Document # 79].

On December 29, 2009, Defendant Burnsworth filed a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted. [Document # 84].

On February 4, 2010, Defendants Poindexter and Sherbine filed a motion to dismiss arguing that Plaintiff: (i) has failed to exhaust his administrative remedies; and, alternatively (ii) has failed to state a claim upon which relief may be granted. [Document # 100].

On February 8, 2010, Defendant Gregory Packaging filed a motion to dismiss on essentially the same grounds as those cited by Defendants Poindexter and Sherbine. [Document # 102].

Plaintiff has filed briefs in opposition to all of the pending motions filed by the various Defendants, except the motion to dismiss filed by Defendants Poindexter and Sherbine. [Document ## 90, 92, 94, and 112]. This matter is now ripe for consideration.

**B.**    **Plaintiff's Claims**

Plaintiff's Amended Complaint, which incorporates all of the allegations of the original

4

complaint, consists of 32 pages and 112 paragraphs of disjointed allegations that attempt to set

forth a multitude of claims against some or all of the 57 named Defendants.[2] From these

allegations, the Court has construed the following claims:

1. A First Amendment free exercise of religion claim against Defendants Chapman, Medlock, Croftcheck, and Waligura (Amended Complaint at Section IV.C, ¶¶ 1, 105-107);

2. An denial of access to courts claim arising from the alleged refusal of Defendants Chapman, Medlock, Croftcheck, and Waligura to allow Plaintiff to attend the law library (Id. at ¶¶ 3-4).

3. An Eighth Amendment deliberate indifference to health and safety claim against Defendants Chapman, Medlock, Croftcheck, and Waligura arising from Plaintiff's placement in a cell with an inmate "with mental health problems" who "had feces and urine throughout his assigned cell." (Id. at ¶¶ 5-7).

4. Eighth Amendment deliberate indifference to serious medical needs claims against Defendant Burnsworth. (Id. at ¶¶ 8, 12, and 21).

5. An Eighth Amendment deliberate indifference to health and safety claim against Fayette County Jail Defendants related to Plaintiff's placement in a cell with "glass all over the bed frame, and exposed live electrical wires" on or about January 3, 2008. (Id. at ¶¶ 13-15).

6. An Eighth Amendment excessive use of force claim against Defendants Brownfield, Barker, Dunkard, and Matthews arising from their alleged use of a "stun belt" on Plaintiff on or about February 6, 2008, which allegedly caused him to suffer "constant and permanent pain and injury to [his] right thumb." (Id. at ¶¶ 16-20, 27).

7. An Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Kennedy, Sobina, Watson, Beard, and Woodard arising from the stoppage of Plaintiff's medically prescribed toothpaste in or around July 2007. (Id. at ¶¶ 28-30).

8. A First Amendment claim against Defendants Beard, Commonwealth, Sobina, Reisinger, Miller, Satterlee, McKnight,

---

[2] The Court notes at the outset that several of Plaintiff's allegations appear to implicate a number of individuals who have not been named as Defendants in this case. Among these non-Defendants are "Burkhart," "Overmyer," "Riskus," "Toski," "Reed," "Wojcik," "Ennis," "Carey," "Steele," "Burks," "Wallace," "Penich," "Graham," "Sawtelle," "Houser," "Dombrowski," and "Story." Because these individuals have not been named as Defendants, the Court will disregard Plaintiff's mention of these individuals in connection with the claims set forth herein.

Heaster, Younkin, and Barone related to the creation of a new policy that prevented Plaintiff from ordering religious, legal, or other written materials. (Id. at ¶ 34).

9.      A retaliation claim against Defendant Satterlee, Sobina and Huapt. (Id. at ¶ 35).

10.     An Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Skunda, Sobina, Reisinger, and Watson related to alleged delays in providing Plaintiff dental treatment from around February 2007 to October 2007. (Id. at ¶¶ 36-37).

11.     Verbal harassment claim against Defendant McKnight (Id. at ¶ 38).

12.     Verbal harassment and retaliation claims against Defendants Best, McKnight, Kennedy, Sobina, and Watson. (Id. at ¶¶ 41-42).

13.     An Eighth Amendment deliberate indifference to health and safety claim against Defendants Zullinger, Gordon, Heberling, Sobina, Gregory Packaging, Heaster, J. Shaffer, Dittman, Skunda, Kennedy, Reisinger, and Beard related to the food that was served Plaintiff at SCI-Forest. (Id. at ¶¶ 43-49).

14.     A retaliation claim against Defendant Whitehead (Id. at ¶ 50).

15.     An Eighth Amendment claim against Defendants Kennedy and Sobina related to the alleged use of food as punishment. (Id. at ¶¶ 51-52).

16.     Eighth Amendment claim arising from Plaintiff's placement on shower restriction for seven days in or around August or September 2007. (Id. at ¶¶ 53-54).

17.     A Fourteenth Amendment due process claim against Defendants Joseph, Weaver, Kerns-Barr, Mark, Moslak, Cross, Andrade, Beard, Sobina, Barone, Heaster, Bush, and McKissock related to the manner in which disciplinary hearings were held and the punishment Plaintiff received for misconducts. (Id. at ¶¶ 55-59).

18.     A retaliation claim against Defendants Satterlee, Sobina, Heaster, Kennedy, and Bush arising from the denial of an "emergency telephone call to [Plaintiff]" after his father was shot and approximately six months after his mother died. (Id. at ¶ 60).

19.     An Eighth Amendment excessive use of force claim against Defendant Best, and a deliberate indifference to health and safety claim against Defendant Sobina related to the same incident. (Id. at ¶ 62).

20.     Conspiracy and Sixth Amendment claims against Defendants

Whiteko, T. Shaffer, Garofalo, Kelley, and Grimm. (Id. at ¶¶ 63-65; 94-98).

21.     An Eighth Amendment deliberate indifference to health and safety claim against Defendants Chapman, Croftcheck, Medlock, and Waligura related to conditions in the Fayette County Jail's Special Housing Unit ("SHU"). (Id. at ¶¶ 66-70; 72-78; 81-91; 100-105).

22.     A Fourteenth Amendment due process claim against Defendants Beard, Satterlee, and Sobina arising from Plaintiff's continued confinement in restricted housing for eight years. (Id. at ¶¶ 110-112).

As relief for his claims, Plaintiff seeks monetary damages and declaratory and injunctive relief.

**C.      Standards of Review**

**1.      Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact

pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

**2.    Summary Judgment**

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted

if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.

<u>Celotex</u>, 477 U.S. at 322; <u>Country Floors</u>, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. <u>Anderson v. Liberty Lobby, Inc</u>. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." <u>Firemen's Ins. Co. of Newark, N.J. v. DuFresne</u>, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 247-249.

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. <u>See</u> <u>Boag v. MacDougall</u>, 454 U.S. 364 (1982); <u>United States ex rel. Montgomery v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); <u>Freeman v. Department of Corrections</u>, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). <u>See, e.g.</u>, <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); <u>Markowitz v. Northeast Land Company</u>, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

**D.**     **Exhaustion of Administrative Remedies**

Defendants Poindexter, Sherbine, and Gregory Packaging argue that Plaintiff has failed to exhaust his administrative remedies with regard to his claims against them, in accordance with the requirements of Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In support of this argument, Defendants Sherbine and Poindexter simply state that Plaintiff "does not specify that he ever filed a grievance as to Rhonda Sherbine or Gloria Poindexter, let alone appealed it to final review," while Defendant Gregory Packaging merely asserts that "[t]here is no allegation that [Plaintiff] pursued any such [administrative] remedy against Gregory Packaging, Inc." (Document # 101 at p. 5; Document # 103 at p. 2). However, it is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

Because no evidence other than Plaintiff's failure to plead exhaustion has been offered by Defendants Sherbine, Poindexter, and Gregory Packaging, their motions to dismiss Plaintiff's claims for failure to exhaust administrative remedies should be denied.

**E.**     **Discussion**

     **1.**     **Claims Against Fayette County Defendants**

        **a.**     **First Amendment Free Exercise of Religion Claim**

Plaintiff complains that his religious rights were violated by Defendants Chapman,

Medlock, Croftcheck, and Waligura, during his confinement in the Fayette County Jail, because he was not provided consultation with a "religious representative his entire time their [sic] to practice his belief," and was denied the ability to keep "religious materials" and newspaper in his cell. (Amended Complaint at Section IV.C, ¶¶ 1, 105-107).

It is well-established that prisoners have a First Amendment right to practice religion while incarcerated. Bell v. Wolfish, 441 U.S. 520, 544 (1979). However, the right to practice one's religion while in prison is not absolute. See Price v. Johnston, 334 U.S. 266, 285 (1948) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."). Under the First Amendment, regulations or policies that infringe upon a prisoner's rights to religious freedom must pass a reasonableness standard, rather than the usual strict scrutiny standard.[3] Turner v. Safley, 482 U.S. 78, 89 (1987). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. Courts generally accord great deference to prison officials' adoption and execution of policies, regulations, and practices relating to the preservation of internal order, discipline, and security within the prison environment. Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989); Turner, 482 U.S. at 85.

Here, however, the Fayette County Defendants have failed to cite any prison regulation or policy in support of their alleged denial of a "religious representative" or religious materials to Plaintiff. Thus, the Court is unable to conduct a reasonableness test under Turner. Furthermore, although they acknowledge that Plaintiff raised a "religious rights" claim (Document # 80 at p. 5), the Fayette County Defendants have failed to assert any argument that would support dismissal of such claim. Accordingly, the Fayette County Defendants' motion to dismiss should

---

[3]

Strict scrutiny is not required because courts need to "afford appropriate deference to prison officials" so that they may "anticipate security problems and adopt innovative solutions to the intractable problems of prison administration." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) quoting Turner v. Safley, 482 U.S. at 89.

be denied to the extent they seek dismissal of Plaintiff's First Amendment free exercise of religion claim.

### b. Denial of Access to Courts Claim

Plaintiff sets forth the following allegations that are collectively construed as a denial of access to courts claim against Defendants Chapman, Medlock, Croftcheck, and Waligura:

2.    Plaintiff tried to attend the law library and to receive law books to prepare for trial of which he was acting pro se.  Plaintiff was not provided access to either.

3.    This denied Plaintiff to properly defend himself at trial, prepare pre trial motions, and present witnesses which would have created a different outcome at trial.

4.    Plaintiff spoke to [Defendants] Chapman, Medlock, Croftcheck, and Waligura to name a few pertaining to the law library issues, and to no avail.

(Amended Complaint at Section IV.C, ¶¶ 2-4).

While inmates have the right to adequate, effective, and meaningful access to the courts, Bounds v. Smith, 430 U.S. 817, 828 (1977),  the United States Supreme Court restricted who may bring an access to courts claim in Lewis v. Casey, 518 U.S. 343, 355 (1996).[4]  The Lewis Court held that, in order to state a claim for a denial of the right of access to the courts, a plaintiff must show actual injury.  Id.   The plaintiff must show that, as a result of the defendant's actions, he lost the ability to present an "arguably actionable claim" against the validity of his sentence under direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action.  Id. at 356.  The Third Circuit has further described the *Lewis* holding:

---

[4]

The Lewis Court opined:

> ...*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355.

> to be able to bring a viable claim, the plaintiff inmates ha[ve] to show direct injury to their access to the courts. The Court explained that an inmate could show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or [he could show] that he had suffered arguably actionable harm that he wanted to bring before the courts, but was so stymied by the inadequacies ... that he was unable even to file a complaint.

Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

So, under *Lewis*, this Court must determine whether Plaintiff has shown that he lost the ability to present an "arguably actionable claim." Here, Plaintiff has made the somewhat vague assertion that he was denied the ability to "properly defend himself at trial, prepare trial motions, and present witnesses which would have created a different outcome at trial." However, these allegations fail to demonstrate that Plaintiff lost the ability to pursue an "arguably actionable claim" challenging either the validity of his sentence or conditions of confinement due to Defendants' alleged actions. Simply making the speculative assertion that a "different outcome at trial" would have occurred is not sufficient to show direct injury.

Moreover, Plaintiff claims elsewhere in his Amended Complaint that he was alternatively represented at trial by Defendants T. Shaffer, Whiteko, and Garofalo, which directly contradicts his allegation that he was acting *pro se*. It has been recognized that, in the context of an inmate's denial of access to courts claim, "[n]o actual injury exists when the state has provided inmates with attorneys, whether voluntarily appointed or retained, to assist inmates" in legal proceedings. Spencer v. Vaughn, 1997 WL 599159 at * 4 (E.D.Pa. July 24, 1999), citing Peterkin v. Jeffes, 855 F.2d 1021, 1046 (3d Cir. 1988). Thus, the Fayette County Defendants' motion to dismiss Plaintiff's denial of access to courts claim against Defendants Chapman, Medlock, Croftcheck, and Waligura, should be granted.

### c. Sixth Amendment and Conspiracy Claims

Plaintiff claims that Defendants T. Shaffer, Whiteko, and Garofalo "did not adequately

14

represent [him] before the court" and, thus, deprived him of his Sixth Amendment rights. (Amended Complaint at ¶¶ 63-65). Plaintiff claims further that Defendants T. Shaffer, Whiteko, and Garofalo "worked with and conspired with" Defendants Kelley and Grimm "to deny [him] of a fair trial," and that Defendants Kelley and Grimm somehow violated his Sixth Amendment rights. (Id. at ¶ 99).[5]

### (1)     Defendants T. Shaffer, Whiteko, and Garofalo

Defendants T. Shaffer, Whiteko, and Garofalo argue that Plaintiff's Sixth Amendment claim against them must be dismissed because, as public defenders, they are not state actors and, thus, are not liable under 42 U.S.C. § 1983. It is well-settled that a "public defender does not act under color of state law [within the meaning of Section 1983] when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 (1981); Black v. Bayer, 672 F.2d 309 (3d Cir. 1982); Cooper v. Turner, 1987 WL 11481 at *1 (E.D.Pa. May 27, 1987). Here, Plaintiff challenges the manner in which Defendants T. Shaffer, Whiteko, and Garofalo conducted their pretrial investigation of his criminal case. Pretrial investigation falls within the ambit of a lawyer's traditional function as criminal defense counsel. Thus, Defendants T. Shaffer, Whiteko, and Garofalo cannot be held liable as state actors under Section 1983, and Plaintiff's Sixth Amendment claim against them should be dismissed

Notwithstanding the foregoing, a private action may be converted into state action if a state actor conspires with a private individual to deprive a plaintiff of his constitutional rights. West v. Atkins, 487 U.S. 42, 54 (1988). The requisite state action may be found even if the state actor with whom the private individual allegedly conspired is himself immune from suit. Dennis

---

[5]

This latter Sixth Amendment claim is also asserted against Defendant Leskinen; however, as noted earlier, Defendant Leskinen was never served with the amended complaint in this case, and no attorney has entered an appearance on his behalf. As a result, he will be dismissed as a Defendant in this case due to Plaintiff's failure to serve him in accordance with Rule 4(m) of the Federal Rules of Civil Procedure.

v. Sparks, 449 U.S. 24, 27-28 (1980)(action against private parties accused of conspiring with judge found to be state action under Section 1983). However, allegations must be particularly specific where conspiracy is alleged so that purely private action may not be converted into state action merely by inclusion of a state official as a defendant in the action. Darr v. Wolfe, 767 F.2d 79, 81 (3d Cir. 1985). In particular, Plaintiff must make specific factual allegations of combination, agreement or understanding among the alleged co-conspirators to plot, plan or conspire an alleged chain of events. Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974).

Here, Plaintiff claims that Defendants T. Shaffer, Whiteko, and Garofalo conspired with Defendants Kelley and Grimm to deny him a fair trial. Plaintiff does not allege any facts to support his bare allegation of conspiracy, nor does he allege the existence of an agreement or identify any acts taken in furtherance of any alleged conspiracy. In fact, Plaintiff's allegations fail to indicate any complicity by Defendants Kelley and Grimm in the acts allegedly taken by Defendants T. Shaffer, Whiteko, and/or Garofalo. The mere mention of a conspiracy, without more, does not convert the public defenders' alleged conduct into state action for purposes of establishing a claim under Section 1983. Thus, Plaintiff's attempt to state a conspiracy claim against Defendants T. Shaffer, Whiteko, Garofalo, Kelley, and Grimm should also be dismissed.

### (2)     Defendants Kelley and Grimm

Defendants Kelley and Grimm argue that Plaintiff's Sixth Amendment claim against them should be dismissed because they are entitled to absolute prosecutorial immunity. The Court agrees.

A prosecutor engaged in "activities intimately associated with the judicial phase of the criminal process" is absolutely immune from section 1983 money damages. Imbler v. Pachtman, 424 U.S. 409, 420 (1976). Prosecutors engaged in solely administrative or investigative duties are not likewise immune. Rose v. Bartle, 871 F.2d 331, 343 (3d Cir. 1989). Courts confronted

16

with claims challenging a prosecutor's actions must utilize a functional analysis to determine whether or not the prosecutor acted within his or her "judicial capacity" when attempting to apply absolute immunity.  Ross v. Morgan, 638 F.2d 646, 648 (3d Cir. 1981).  *See also* Rose v. Bartle, 871 F.2d at 343.  Actions that relate to the prosecutor's role as an advocate are "judicial" actions. Mancini v. Lester, 630 F.2d 990, 993 (3d Cir. 1980).  For example, prosecutors are absolutely immune from claims for malicious prosecution, for solicitation of perjured testimony, and for conspiracy with state actors while engaged in an advocacy role.  *See* Rose; Imbler; Ross.

Here, Plaintiff does not specify the actions allegedly taken by Defendants Kelley and Grimm that somehow violated his Sixth Amendment rights.  However, there is nothing indicating that their alleged actions were taken outside their roles as advocates.  As a result, Defendants Kelley and Grimm are immune from liability under the doctrine of absolute prosecutorial immunity and the Sixth Amendment claim against them should be dismissed.

### d. Eighth Amendment Claims

### (1). Conditions of Confinement

Plaintiff makes several claims against Defendants Chapman, Medlock, Croftcheck, and Waligura regarding the conditions of his confinement at the Fayette County Jail.  These include the following:  (i) a claim arising from his placement in a cell with an inmate with "mental health problems" who would "prevent everyone from getting any sleep," and "had feces and urine throughout his assigned cell" (Amended Complaint at Section IV.C, ¶¶ 5-7); (ii) a claim arising from his placement in a cell with "glass all over the bed frame and exposed electrical wires," on or about January 3, 2008 (Id. at ¶¶ 13-15); and (iii) a claim challenging various conditions of confinement in Fayette County Jail's SHU (Id. at ¶¶ 66-91; 100-109).

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  An

objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, clothing, shelter, and medical care. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992)(holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). Furthermore, to establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

### (a)     Placement with Mentally-Challenged Cell Mate

With regard to Plaintiff's claim that he was placed in a filthy cell with a mentally-challenged cell mate, the Court notes that Plaintiff does not claim that the cell mate posed any danger or caused him harm. Instead, the claim focuses on the unsanitary conditions in the cell and the cell mate's sleep-depriving behavior.

In response, the Fayette County Defendants argue that "courts have found that the Eighth Amendment is not violated in much more harsh conditions." (Document # 80 at p. 16, citing, inter alia, Peterkin v. Jeffes, 885 F.2d 1021, 1026-28 (3d Cir. 1988)(holding that being made to sleep on dirty mattress on floor did not make out an Eighth Amendment claim); Wilson v. Schomig, 863 F.Supp. 789, 794-95 (N.D.Ill. 1994)(ruling that without a showing of physical harm, claim that inmate was forced to sleep on urine and feces-stained mattress in dirty, roach-infested, leaky cell was not enough to make out an Eighth Amendment claim)). In addition, the Fayette County Defendants note that Plaintiff was subjected to these conditions, if at all, for only short periods of time, because his various stays in the Fayette County Jail were temporary, with

the longest lasting only sixteen days.[6]  Thus, they argue that his allegations do not rise to the level of an Eighth Amendment violation.  The Court agrees.

Isolated instances of deficient and uncomfortable conditions do not constitute cruel and unusual punishment.  Roach v. Kligman, 412 F.Supp. 521, 527 (E.D.Pa. 1976)(confinement in a "cold and leaky" cell for short period of time does not violate Eighth Amendment).  See also Chapman v. Doe, 1988 WL 124894 at *1 (E.D.Pa. Nov. 23, 1988)(dismissing as frivolous Eighth Amendment claim based on lack of cleaning materials and proper food for period of twelve days); Morrison v. Clark, No. 84-4688 (E.D.Pa. Feb. 27, 1985)(confinement in unclean, insect-infested cell for two days does not violate Eighth Amendment).  As a result, Plaintiff's Eighth Amendment claim against the Fayette County Jail Defendants arising from his placement in a filthy cell with a mentally-challenged cell mate should be dismissed.

### (b)     Placement in Cell with Glass on Bed Frame and Exposed Electrical Wires

Plaintiff's second Eighth Amendment claim regarding the conditions of confinement at the Fayette County Jail, arises from his placement in a cell "with glass all over the bed frame and exposed live electrical wires," on January 3, 2008.  However, Plaintiff has not alleged that any of the named Fayette County Jail Defendants were personally involved in placing him in the cell or in causing the conditions of which he complains, nor has he alleged that any of said Defendants were made aware of, or acquiesced in, his exposure to such conditions.  It is well-settled that a claim for the alleged deprivation of a constitutional right must be based upon a defendant's personal involvement, knowledge or acquiescence in the alleged misconduct.  Rhodes v. Dellaciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  A plaintiff must, therefore, allege and then prove that a defendant played an "affirmative" role in the violation of his rights.  Chinchello v.

---

[6]

According to the Fayette County Defendants, Plaintiff's periods of incarceration in the Fayette County Jail occurred on the following dates:  July 20, 2006; January 1-17, 2007 (sixteen days); January 31-February 9, 2007 (nine days); January 3-15, 2008 (twelve days); and February 1-8, 2008 (one week).  (Document # 80 at p. 17 n. 2).

<u>Fenton</u>, 815 F.2d 126, 133 (3d Cir. 1986).  Plaintiff has failed to do so here.  Accordingly, Plaintiff's Eighth Amendment claim arising from his placement in a cell with glass on the bed frame and exposed electrical wires should be dismissed.

### (c)     Conditions of Confinement in the SHU

Plaintiff raises a number of complaints regarding the conditions of his confinement in Fayette County Jail's SHU.  These include the following:

1.    An open window and "freezing air" prevented him from sleeping (Amended Complaint at Section IV.C, ¶ 66);

2.    He was given only one blanket and the cell was "filthy" (<u>Id</u>. at ¶ 67);

3.    When he slept, his head was "inches from the toilet" and he could not control the flushing (<u>Id</u>. at ¶ 68);

4.    He could not sleep because of the "extreme bright light" in his cell (<u>Id</u>. at ¶ 69);

5.    The SHU did not contain any smoke or "fire-detecting devices," and contained asbestos (<u>Id</u>. at ¶¶ 70-71);

6.    The toilets "would just start forcing body waste of others" into his cell (<u>Id</u>. at ¶ 73);

7.    He was housed and took showers with two different inmates "who had not been screen[ed] nor cleared by med." (<u>Id</u>. at ¶¶ 74-75);

8.    He was "forced to eat off plastic food trays with his hands," and the same trays and cups were re-used (<u>Id</u>. at ¶¶ 76-77);

9.    He was given a mattress that caused him back pain and that "was so short that Plaintiff injured his toe in a hole in the bed frame" (<u>Id</u>. at ¶¶ 81-82);

10.    He was not provided outdoor exercise or shower shoes, and his deodorant and soap weren't replaced when they ran out (<u>Id</u>. at ¶¶ 85-89);

11.    During the summer months the SHU was "so hot it was like being in an oven (<u>Id</u>. at ¶ 91).

12.    The water was turned off "for a day or more," because "raw sewage containing others urine and fecal matter" overflowed (<u>Id</u>. at ¶¶ 100-103); and

13.     The food service area was "infested with rodents" (Id. at ¶ 104).

In the context of a conditions of confinement claim, the Honorable Lisa Pupo Lenihan recently observed that "[n]either classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual." Brown v. Beard, 2:07-cv-637, slip op. at * 16 (W.D.Pa. Mar. 9, 2009), citing Hutto v. Finney, 437 U.S. 678, 686 (1978); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981)("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment"). Judge Lenihan remarked further that institutions housing "persons convicted of serious crimes cannot be free of discomfort." Brown, slip op. at * 17 (citations omitted). In this regard, Judge Lenihan upheld the conditions in the SMU and LTSU in the face of an Eighth Amendment challenge, citing with approval the Pennsylvania Superior Court's decision in Rivera v. Pennsylvania Department of Corrections, 827 A.2d 525 (Pa.Super. 2003), which rejected an Eighth Amendment challenge to conditions of confinement in the LTSU based upon allegations substantially similar to Plaintiff's challenge in this case. In particular, the Rivera court observed and upheld the following conditions that existed in the LTSU at issue in that case:

> The LTSU ... is potentially a stay of indefinite duration for the inmate.
>
> The basic conditions in this most restrictive of units designed for the most severe behavioral problems are, perhaps not surprisingly, very unpleasant.
>
> The inmates are not allowed most types of personal property, newspapers, leisure books, radio, television, visits, or participation in educational or religious programs. They are confined in a solitary cell for twenty-four hours a day. Three showers a week are allowed and one hour of exercise a day, five days a week. There are limited library privileges and it is not open on the weekends.
>
> There is a regular problem of feces throwing and the accompanying stench, which has been recently only partially corrected by a modification of the cell doors. Another practice of stopping up toilets until they run over and flood the cells, is not uncommon and can lead to similar unsanitary conditions. Although the institution has a specialized team to go in and clean and sanitize after such incidents, the evidence

21

suggests that there are sometimes period of delay during which the inmates are residing and even eating their meals within the sight and smell of human waste...

.... There is considerable noise described as banging and screaming in the unit at all hours of the day and night and the lights are left on twenty-four hours a day. Many of the inmates are described as suffering from mental or emotional illnesses, although the severely mentally ill are apparently housed in a separate unit.

There have been problems with the heat during which the cells have been quite cold during the winter months, although extra blankets appear to have been available at those times.... At times, pepper spray is used to control unruly inmates, and the spray lingers in the air, causing problems for the surrounding inmates.

This Court would expect the conditions on such a unit to be even less pleasant than the rest of the prison, and that few privileges, comforts or amenities will be available, as the LTSU is disciplinary custody and is intended to be punitive.

Rivera, 837 A.2d at 529-32. See also Burkholder v. Newton, 116 Fed. Appx. 358, 363 (3d Cir. 2004)("it is questionable if having a cold cell or a toilet that backs up sometimes is really an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life'").

Here, Plaintiff is complaining about conditions quite similar to and, in many respects, less harsh than those that were found to be consistent with the Eighth Amendment in Brown and Rivera. Moreover, unlike the prisoners in Brown and Rivera, Plaintiff was subjected to the conditions in the Fayette County Jail's SHU for only short periods of time, with the longest period lasting no more than sixteen days. As a result, Plaintiff's Eighth Amendment claim regarding conditions of confinement in the Fayette County Jail's SHU should be dismissed.

### (2)    Excessive Use of Force

Plaintiff claims that, on or about February 6, 2008, Defendants Brownfield, Barker, Dunkard, and Matthews used excessive force when they "electrified" him with a stun belt while escorting him from the Fayette County Court back to the Fayette County Jail. (Amended Complaint at ¶¶ 16-20). Plaintiff alleges that the stun belt was activated as "an act of retaliation for speaking out once confronted by a court officer whom also worked at SCI-Fayette." (Id. at

¶ 17).  As a result, Plaintiff alleges that he "lost all bowel movement" and has since suffered "constant and permanent pain, and injury to [his] right thumb." (Id. at ¶ 27).

"In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm." Wilson v. Shannon, 982 F.Supp. 337, 340 (E.D.Pa. 1997), citing Hudson v. McMillian, 503 U.S. 1, 7 (1992).  However, *de minimis* uses of physical force are excluded from constitutional recognition, provided that the use of force is not "'repugnant to the conscience of mankind.'" Whitley v. Albers, 475 U.S. 312, 327 (1986), quoting, Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Reyes v. Chinnici, 54 Fed. Appx. 44, 48 (3d Cir. 2002)("[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically").

Here, Plaintiff's allegations are found to be sufficient to state a claim of excessive use of force at this early stage of the proceeding, and the Fayette County Defendants have failed to put forth any argument that would otherwise support dismissal of this claim.  Accordingly, to the extent the Fayette County Defendants may be moving to dismiss Plaintiff's Eighth Amendment excessive use of force claim against Defendants Brownfield, Barker, Dunkard, and Matthews, such motion should be denied.

### 2.  Claims v. Defendant Burnsworth

Plaintiff makes three allegations involving Defendant Burnsworth which may be liberally construed as deliberate indifference claims:

1.  Around Jan. 3, 2008, Plaintiff told Burnsworth and other med. staff of his chronic conditions (and of which they knew of) he needed med. for due to his right knee and lower back condition. (Amended Complaint at Section IV.C, ¶ 8);

2.  Plaintiff is allergic to wool of which he informed Burnsworth,... to no avail (Id. at ¶ 12); and

23

3.      All evening I pleaded to see med. [after allegedly being "electrified" with a stun belt]  I believe it was Nurse Burnsworth whom stated med. was given orders not to assist me. (Id. at ¶ 21).

Defendant Burnsworth argues, *inter alia*, that Plaintiff "has failed to plead facts which show an entitlement to relief and, thus, has failed to satisfy the 'plausibility' prong of Fowler's two step analysis." (Document # 85, Defendant Burnsworth's Brief, at p. 6).  The Court agrees. "[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to show such an entitlement with its facts.  As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d. 203, 211 (3d Cir. 2009).  Here, the facts as pled fail to show that Defendant Burnsworth refused to provide medical care because (1) Plaintiff is unsure that it was Defendant Burnsworth who told him that the medical staff was not to assist him after the stun belt incident; and (2) it is unclear **when** Defendant Burnsworth, if it was he, allegedly told this to Plaintiff (at the time Plaintiff was seeking medical help or sometime thereafter) such that it cannot be ascertained whether this Defendant failed to meet any of Plaintiff's medical needs. Vague implications and innuendos are not sufficient to establish an entitlement to relief.  Thus, Plaintiff's Eighth Amendment claims against Defendant Burnsworth should be dismissed for failure to state a claim upon which relief may be granted.  In addition, since these are the only claims asserted against Defendant Burnsworth, he should be dismissed from this case.

### 3.      Claims v. Commonwealth Defendants

#### a.      Eleventh Amendment Immunity

The Commonwealth Defendants argue that the Commonwealth and all individual Commonwealth Defendants sued in their official capacities are immune from suit under the Eleventh Amendment.  The Court agrees.

With regard to the Commonwealth, the Eleventh Amendment proscribes actions in the

federal courts against, *inter alia*, states and their agencies. <u>Laskaris v. Thornburgh</u>, 661 F.2d 23 (3d Cir. 1981)(Pennsylvania); <u>Mt. Healthy City Board of Education v. Doyle</u>, 429 U.S. 274 (1977)(state agencies). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it... a State cannot be sued directly in its own name regardless of the relief sought." <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 14 (1985), <u>citing</u> <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978). No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued. <u>Wilson v. Vaughn</u>, No. 93-C.V.-6020, 1996 WL 426538, *1 n.2 (E.D.Pa. July 30, 1996)(citing, 42 Pa. Con. Stat. Ann. §8521(b)), nor has Congress expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits. <u>Smith v. Luciani</u>, No. 97-3613, 1998 WL 151803, *4 (E.D.Pa. March 31, 1998), <u>aff'd</u>, 178 F.3d 1280 (3d Cir. 1999)(Table). Thus, Plaintiff's claims against the Commonwealth are barred by the Eleventh Amendment and the Commonwealth should be dismissed from this case.

Similarly, with regard to the individual Commonwealth Defendants, it is well settled that suits for damages by individuals against state officers acting in their official capacities are barred by the Eleventh Amendment. <u>See</u> <u>Kentucky</u>, 473 U.S. at 165-67. Accordingly, all claims for monetary damages against the individual Commonwealth Defendants in their official capacities should be dismissed.

### b. First Amendment Claim

Plaintiff claims that he "was prevented from practicing [his] religion, as well as other First Amendment rights when [Defendant] Beard with the approval of Commonwealth, created and put in place a policy 6.5.1 procedures manual which would not allow [Plaintiff] to order religious, legal, or any other materials." He then goes on to allege that Defendants Sobina, Reisinger, Miller, Satterlee, McKnight, Heaster, Younkin, and Barone "[were] aware and did nothing to correct the issue." (Amended Complaint at ¶ 34).

25

Initially, the Commonwealth Defendants argue that this claim should be dismissed as against all named Defendants other than Defendant Beard, based upon their lack of personal involvement in the challenged conduct. The Court agrees. Liability can only be imposed if [an] official played an "affirmative part" in the complained-of misconduct. <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Here, Plaintiff merely alleges that all named Defendants other than Beard were "aware [of the challenged policy] and did nothing to correct the issue." This is insufficient to show that these Defendants played an affirmative part in the complained-of misconduct. Thus, Plaintiff's First Amendment claim against Defendants Sobina, Reisinger, Miller, Satterlee, McKnight, Heaster, Younkin, and Barone should be dismissed.

With regard to Defendant Beard, the Commonwealth Defendants argue that Plaintiff has failed to plead enough facts to state a First Amendment claim. Again, the Court agrees. In particular, Plaintiff's claim consists of the single bald assertion that a newly-enacted policy would not allow him to order religious, legal, or any other materials, which somehow prevented him from practicing his religion and "other First Amendment rights." However, Plaintiff has failed to identify the materials he was allegedly prevented from ordering or how the alleged absence of such materials hindered his religious practice or his exercise of "other First Amendment rights." In short, the facts of the Amended Complaint fail to show an entitlement to relief and are, thus, insufficient to state a claim. <u>See</u> <u>Fowler</u>, 578 F.3d. at 211, <u>citing</u> <u>Iqbal</u>, <u>supra</u>.("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief"). Accordingly, Plaintiff's First Amendment claim against Defendant Beard should also be dismissed.

**c.**      <u>**Eighth Amendment Claims**</u>

<u>**(1)**</u>      <u>**Conditions of Confinement at SCI-Forest**</u>

<u>**(a)**</u>      <u>**Food Service**</u>

Plaintiff claims that "[t]he entire time [he] was housed at Forest, [his] health & safety was placed at risk for serious harm w[h]ere [he] became sick due to the deliberate indifference actions [sic] of the food service dept." (Amended Complaint at Section IV.C, ¶ 43). In particular, Plaintiff raises the following complaints, which are set forth verbatim from the Amended Complaint:

44. Due to fish served at Forest, myself as well as other prisoners and staff became sick after eating. Also bad/molded juice was served from the time I arrived at Forest until I was transferred, and of which I became sick and had [to] seek med. attention.

45. Food trays were used which contained contaminated dish water on a daily basis, which was due to old trays with cracks in them being used and not discarted [sic]. And in no way due to condinsation [sic].

46. On many occasions food was served cold due to the electrical cord being missing from the heated food cart.

47. Several occasions bad fruit was served which also placed my health & safety at risk for serious harm. Due to the cups used and the way food was transported to the unit/block - half of its content would spill out. Hot cakes were served half cooked before, as well.

48. Many meals I received soggy bread which I refused to eat....

49. As a result of the unsafe & unhealthy food practices not only did I become sick - but I did not receive the 2,000 calories per day as required by DOC policy, and well established law.

(Id. at ¶¶ 44-49).

Plaintiff claims that he notified Commonwealth Defendants Zullinger, Gordon, Heberling, Sobina, Heaster, J.Shaffer, Dittman, Skunda, Kennedy, Reisinger, and Beard, "to no avail." (Id. at ¶ 48). Once again, the Commonwealth Defendants argue that Plaintiff's food-related claims must be dismissed because he has failed to allege that any of the named Defendants played an affirmative part in the complained-of misconduct. The Court agrees. Simply alleging that certain prison officials and/or staff members were notified of Plaintiff's food complaints "to no avail" fails to adequately set forth (i) the manner and timing of the notice that was allegedly given to each Defendant, and (ii) the level of each Defendant's involvement (i.e.,

food preparation, food distribution, supervision of food service, grievance review, etc.). Such facts are essential to establish the extent to which each named Defendant allegedly played an affirmative part in the conduct being challenged. Plaintiff's failure to allege sufficient facts to establish each named Defendants' personal involvement is fatal to his claim. Accordingly, Plaintiff's food-related claims against individual Commonwealth Defendants Zullinger, Gordon, Heberling, Sobina, Heaster, J. Shaffer, Dittman, Skunda, Kennedy, Reisinger, and Beard, should be dismissed.

Plaintiff also alleges that he notified Defendant Gregory Packaging of his food-related complaints "to no avail." This claim must also be dismissed because, not only has Plaintiff failed to adequately allege Gregory Packaging's involvement in the challenged conduct, he has also failed to allege any facts that would show that Gregory Packaging was acting under color of state law, which is necessary to state a cause of action under 42 U.S.C. § 1983. Because this is the only allegation in the Amended Complaint against Defendant Gregory Packaging, said Defendant should be dismissed from this case.

### (b) Shower Restriction

Plaintiff alleges that in August or September 2007, staff at SCI-Forest placed him on shower restriction for seven days, which, he claims, "amounted to excessive punishment." Plaintiff alleges further that Defendants Kennedy, Sobina, and Watson "were made aware of the matter and did nothing to correct it." (Amended Complaint at ¶¶ 53-54).

As cited earlier, to succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, clothing, shelter, and medical care. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional

Facility, 221 F.3d 410, 419 (3d Cir. 2000); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992)(holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. Rhodes, 452 U.S. at 347.

Under the foregoing standards, Plaintiff has failed to show that the alleged denial of showers for a one week period was sufficiently serious to deprive him of the "minimal civilized measure of life's necessities." See Fortune v. Hamberger, 2010 WL 1837743 at *5 (3d Cir. May 7, 2010)(holding that fifteen day restriction on showers and exercise did not constitute cruel and unusual punishment); Brown v. Denman, 2010 WL 1881087 at *3-4 (W.D.Mich. May 11, 2010)(limit to showering once per week for a period of thirty days did not deny plaintiff basic human needs in violation of Eighth Amendment). Accordingly, Plaintiff's Eighth Amendment claim against Defendants Kennedy, Sobina, and Watson, regarding his alleged placement on shower restriction for seven days, should be dismissed.


### (c) Food Loaf

Plaintiff alleges that "food was used as punishment and/or used arbitrarily and capriciously" when he was placed on food loaf for seven days, and that Defendants Kennedy and Sobina "were made aware of the matter and did nothing to correct it." (Amended Complaint at ¶¶ 51-52).

It is well settled that prisoners are entitled to a nutritionally adequate diet. Laufgas v. Speziale, 263 Fed. Appx. 192, 198 (3d Cir. 2008), citing Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980). The Eighth Amendment requires that prison officials serve "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Ramos, 639 F.2d at 571. Here, however, Plaintiff does not assert that his meals were prepared or served in a manner that

29

jeopardized his health. Instead, Plaintiff is simply complaining that he was unjustly placed on a food loaf diet. This is insufficient to establish an Eighth Amendment claim.

It has been widely held that placing an inmate on a food loaf diet, even for a seven day period of time, does not present a viable Eighth Amendment claim. See, e.g., Lane v. Culp, 2007 WL 954101 at * 4 (W.D.Pa. Mar. 28, 2007)("providing an inmate with a food loaf for seven days is not a violation of the Eighth Amendment"), citing Gates v. Huibregtse, 69 Fed.Appx. 326 (7th Cir. 2003); Adams v. Kincheloe, 743 F.Supp. 1385, 1391 (E.D.Wash. 1990). See also LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993)(temporary nutra-loaf diet does not violate Eighth Amendment). Accordingly, Plaintiff's claim that he was served food loaf as punishment should be dismissed.

### (2)     Excessive Use of Force

Plaintiff claims that Defendant Best, among others, "used excessive force against [him] to where [he] had to seek med. attention for [his] injuries." Plaintiff alleges further that Defendant Sobina "witnessed the event and did nothing to stop or correct it." (Amended Complaint at ¶ 62). In response, the Commonwealth Defendants argue that Plaintiff has failed to make sufficient factual averments to support this claim. The Court agrees.

As cited earlier, "[i]n order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm." Wilson v. Shannon, 982 F.Supp. 337, 340 (E.D.Pa. 1997), citing Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Here, Plaintiff has failed to allege any facts describing the manner of force used, the circumstances surrounding the alleged use of force, or the nature and extent of his alleged injuries. Simply alleging that Defendant Best "used excessive force" that allegedly caused Plaintiff to suffer injury is nothing more than a legal conclusion that is insufficient to state a

cognizable Eighth Amendment claim. Defendant Best should be dismissed.

In addition, Plaintiff's subsequent allegation that Defendant Sobina "witnessed the event and did nothing to stop it" is also insufficient to state a claim upon which relief may be granted, as there are no factual averments indicating what he may have "witnessed" or how or why he should have intervened. Thus, Plaintiff's related claim against Defendant Sobina should also be dismissed.

### (3)    Verbal Abuse

Plaintiff alleges that Defendant McKnight "used racial, and homosexual comments, and verbally attacked [his] religious belief, and harassed [him]." (Amended Complaint at ¶ 38). Similarly, Plaintiff alleges that Defendants McKnight and Best "loudly stat[ed] that [he] was a baby raper, rat, and homosexual" and that his "religion was verbally attacked also." (Id. at ¶ 41).

It is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983. See Wright v. O'Hara, 2004 WL 1793018 at *7 (E.D.Pa. Aug. 11, 2004)("[w]here plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit")(citations omitted); MacLean v. Secor, 876 F.Supp. 695, 698-99 (E.D.Pa. 1995)("[i]t is well-established that verbal harassment or threats ... will not, without some reinforcing act accompanying them, state a constitutional claim"); Murray v. Woodburn, 809, F.Supp. 383, 384 (E.D.Pa. 1993)("Mean harassment ... is insufficient to state a constitutional deprivation")(listing cases). Thus, Plaintiff's allegations of verbal abuse do not amount to constitutional violations and should be dismissed

### (4)    Medical Claims

Plaintiff asserts the following deliberate indifference to serious medical and dental need claims: (i) a claim against Defendants Kennedy, Sobina, Watson, Beard, and Woodard arising from the stoppage of Plaintiff's medically "prescribed/recommended" toothpaste (Id. at ¶¶ 28-

30); and (ii) a claim against Defendants Skunda, Sobina, Reisinger, and Watson related to alleged delays in providing Plaintiff dental care from around February 2007 to October 2007 (Id. at ¶¶ 36-37).

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need,[7] and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

### (a) Toothpaste Claim

Plaintiff claims that, "some time around July of 2007, the Department of Corrections

---

[7]

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

interfered with and stopped [him] from obtaining prescribed/recommended med. toothpaste to stop the pain [he] suffered." He alleges further that Defendants Kennedy, Sobina, Watson, and Beard were all "made aware of the problem yet were deliberately indifferent to [his] serious med. needs when they did nothing to correct the wrong." (Amended Complaint at ¶¶ 28-29). In particular, Plaintiff alleges that he "wrote request to staff slips to... [Defendant] Sobina... to no avail," that he "was then forced to write a letter to [Defendant] Beard which went unanswered," and that he "also wrote [Defendant] Woodard to no avail." (Id. at ¶ 30). The Commonwealth Defendants argue that these allegations are insufficient to establish the named Defendants' personal involvement in the complained-of misconduct. However, while the Court agrees that the foregoing allegations are rather vague, Plaintiff does allege that the toothpaste was medically "prescribed/recommended" and that the named Defendants essentially ignored his requests to have the toothpaste restored to him. Assuming these factual allegations to be true at this early stage of the proceeding, the Court finds that Plaintiff has stated enough to raise a cognizable Eighth Amendment deliberate indifference claim against Defendants Kennedy, Watson, Sobina, Beard, and Woodard. Accordingly, the Commonwealth Defendants' motion to dismiss the same should be denied.

## (b)    Dental Treatment Claim

Plaintiff alleges that "from around Feb., 2007 until approx. Oct., 2007, [he] had problems with [his] teeth to where [he] was made to go thru extreme pain after submitting sick call after sick call slip to the dental dept.... The on going problem with the dental/med. dept. deliberate act in not seeing, nor treating [him] for weeks at a time was known by [Defendants] Skunda, Sobina,... Reisinger, and Watson." (Amended Complaint at ¶¶ 36-37). Once again the Commonwealth Defendants argue that Plaintiff has failed to sufficiently allege the named Defendants' personal involvement in the challenged conduct. In this instance, the Court agrees.

Construed in the most favorable light, the foregoing allegations, at most, allege that

Defendants Skunda, Sobina, Reisinger, and Watson were aware that Plaintiff was not being treated by the dental department "for weeks at a time" for his painful dental problems, despite his repeated sick call requests. However, simply being aware that Plaintiff was having problems getting treated as often as he requested does not amount to deliberate indifference under the Eighth Amendment, nor does such an alleged "awareness" indicate that the named Defendants played an affirmative part in the complained-of misconduct. Thus, Plaintiff's Eighth Amendment deliberate indifference claim against Defendants Skunda, Sobina, Reisinger, and Watson, related to his problems with the dental department, should be dismissed.

### d. Fourteenth Amendment Due Process Claims

Plaintiff has stated two due process claims against the Commonwealth Defendants: (i) a claim that he was continually denied due process at "many disciplinary hearings," which allegedly caused him to remain in the restricted housing unit ("RHU") for "eight straight years." (Amended Complaint at ¶¶ 55-59, 110); and (ii) a claim that, due to the length of time he remained in disciplinary custody, he was denied access to programs prescribed by the DOC and/or mandated by the courts, which made him ineligible for parole. (Id. at ¶¶ 111-112).

To establish a due process claim under the Fourteenth Amendment, Plaintiff must demonstrate (i) the existence of a constitutionally protected liberty or property interest; and (ii) constitutionally deficient procedures by the state in its deprivation of that interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972). If there is no protected interest, there is no need to determine whether the alleged deprivation was without due process. Alvin v. Suzuki, 227 F.3d 101, 116 (3d Cir. 2000).

### (1) Due Process at Disciplinary Hearings

In response to Plaintiff's due process challenge to the manner in which his "many disciplinary hearings" were held, the Commonwealth Defendants argue that no due process rights

were violated because no liberty interest was at stake. Specifically, the Commonwealth Defendants assert that "Plaintiff's detention in disciplinary custody [resulting from the misconducts] fails to create a liberty interest triggering due process protection." (Document # 78 at pp. 12-13). Defendants base this argument on the Supreme Court's finding in Sandin v. Conner, 515 U.S. 472 (1995), that "discipline in segregated confinement d[oes] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486.

In reaching this conclusion, however, the Sandin court "did not pronounce a *per se* rule." Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003). "In deciding whether a protected liberty interest exists under Sandin, we consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." Mitchell, 318 F.3d at 531-32, citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000). In applying these factors, the Third Circuit has reached differing conclusions, "reflecting the fact-specific nature of the *Sandin* test." Mitchell, 318 F.3d at 532, comparing, *inter alia*, Shoats, 213 F.3d at 144 (eight years in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited him from visiting the library or "participating in any education, vocational, or other organization activities," clearly implicated a protected liberty interest), with Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(seven months of disciplinary confinement did not implicate a liberty interest), and Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (administrative detention for a period of 15 months, which imposed strict restrictions on outside contact and personal conveniences, did not impose atypical and significant hardship and, thus, did not implicate a liberty interest).

Here, according to Plaintiff, he has remained in disciplinary custody for a continuous period of eight years. (Amended Complaint at ¶ 110).[8] Moreover, the amended complaint

---

[8]

In their brief, the Commonwealth Defendants argue that Plaintiff is challenging each individual misconduct and, thus, "it is the time he received in disciplinary custody as a result of each individual misconduct that matters here."

contains a number of allegations indicating that Plaintiff's long-term confinement in disciplinary custody has exposed him to conditions that have caused him to suffer significant hardship in relation to the ordinary incidents of prison life. Accordingly, this Court finds that the allegations of the Amended Complaint sufficiently demonstrate that Plaintiff "has a protected liberty interest that has been adversely affected by his indefinite segregation in [disciplinary] custody." Shoats, 213 F.3d at 144.

Nonetheless, the Commonwealth Defendants argue that "[t]o whatever extent the nature of Plaintiff's confinement in the RHU does create an atypical condition and, thus, a limited liberty interest under Sandin, Plaintiff has been afforded all of the process that he is due." (Document # 78 at p. 13). Specifically, Defendants argue that Plaintiff has received the requisite periodic reviews by the Program Review Committee, which they claim is all the process that is required. (Document # 78 at pp. 14). In support of this argument, Defendants cite the case of Delker v. McCullough, 103 Fed.Appx. 694 (3d Cir. 2004)(holding that the DOC's periodic reviews of status provided inmate due process to which he was entitled for continuing placement in administrative confinement), which, in turn, cites Shoats, 213 F.3d at 147 (holding that periodic reviews by the PRC comport with minimum constitutional standards for due process). However, the minimal procedures outlined in Shoats and Delker are sufficient "only if the restraint is for administrative – rather than disciplinary – reasons; if the restraint is imposed for disciplinary reasons, the procedures required by Wolff [v. McDonnell, 418 U.S. 539 (1974)] apply." Pressley v. Blaine, 2009 WL 3842753 at * 6 (Nov. 18, 2009), citing Stevenson v. Carroll, 495 F.3d 62, 70-71 (3d Cir. 2007). "Therefore, whether [Plaintiff] received periodic reviews by the PRC [is] not relevant to the due process inquiry." Id.

Under the appropriate standard established by Wolff and its progeny, "due process

---

(Document # 78 at p. 13 n. 6). However, the Court does not construe Plaintiff's claim in this manner. Rather, it is apparent that Plaintiff is challenging the total accumulation of time he spent in disciplinary custody as a result of the alleged due process violations at his misconduct hearings. (See Amended Complaint at ¶¶ 58, 110). Thus, the continual period of time Plaintiff spent in disciplinary custody is at issue here.

prohibits the deprivation of a prisoner's liberty interest at a disciplinary hearing unless the prisoner is given: (1) an impartial decision-making body; (2) twenty-four hour notice of the charges; (3) an opportunity to call witnesses and present documentary evidence; (4) assistance from a representative; and (5) a written decision explaining the evidence relied upon." Pressley at * 4, citing Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). In addition, the disciplinary decision must be supported by at least "some evidence." Superintendent v. Hill, 472 U.S. 445, 455 (1985); Briggs v. Marbury, 2008 WL 554927 at * 7 (3d Cir. Feb. 28, 2008).

Here, Plaintiff claims that he was "denied an adequate opportunity to prepare and present a defense; the HEX (Hearing Examiner) was not impartial, and used a practice/custom of denying all witnesses whom are prisoners that would have pose[d] no hazard or security concerns; denied [him] assistance where [he] could not collect statements nor evidence due to [his] confinement in the RHU...; and did not apply the proper standard of review by state mandatory law by not applying the preponderance of evidence standard, instead relied on the unsworn report." The Commonwealth Defendants have failed to respond directly to these allegations, and the record is devoid of any evidence that would conclusively rebut them. Since some or all of these allegations, if proven at trial, may be sufficient to establish a violation of Plaintiff's due process rights under Wolff and its progeny, neither outright dismissal nor summary judgment is warranted with regard to this claim.

That being said, the Commonwealth Defendants have alternatively argued that Plaintiff's claim should be dismissed because he has failed to establish that any of the named Commonwealth Defendants were personally involved in the alleged due process violations. The Court agrees, in part. Specifically, after setting forth the basis for his due process claim regarding the manner in which his disciplinary hearings were conducted, Plaintiff adds a paragraph stating that "[r]esponsible for the violations and continued violations after being made aware are: [Defendants] Joseph D., Weaver, Kerns-Barr, Mark, Moslak, Cross, Andrade, Beard, Sobina, Barone, Heaster,... Ennis,... Bush,... and P. McKissock...." (Amended Complaint at ¶ 59).

Construing this paragraph in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged the personal involvement of the following Commonwealth Defendants who allegedly acted as hearing examiners at one or more of Plaintiff's disciplinary hearings: Joseph D., Weaver, Kerns-Barr, Mark, Moslak, Cross, Andrade, and McKissock. However, Plaintiff's vague allegation that Defendants Beard, Sobina, Barone, Heaster, Ennis, and Bush were "made aware" of the alleged violations, is insufficient to show that said Defendants played an affirmative part in the alleged due process violations.

Accordingly, Plaintiff's due process claim arising from the manner in which his disciplinary hearings were held, should be dismissed against Defendants Beard, Sobina, Barone, Heaster, Ennis, and Bush, but should be allowed to proceed against Defendants Joseph D., Weaver, Kerns-Barr, Mark, Moslak, Cross, Andrade and McKissock, at this stage of the proceeding.

### (2)    Denial of Access to Programs

Plaintiff alleges that, as a result of being confined in the RHU for "eight straight years," he "requested and was denied to partake in programs recommended and prescribed by the DOC, as well as court mandated programs." (Amended Complaint at ¶ 111). Consequently, Plaintiff alleges that he was "denied treatment, and made ineligible for parole and the max his sentence provided." (Id. at ¶ 112). The Commonwealth Defendants seek dismissal of this claim, arguing that Plaintiff has no liberty interest in obtaining parole under Pennsylvania's discretionary parole system. The Court agrees.

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S.

778, 781 (1973). Liberty interests that fall within this category include the revocation of parole, Morrissey v. Brewer, 408 U.S. 471 (1972), and the revocation of probation, Gagnon, 411 U.S. at 778. However, the granting of parole prior to the expiration of a prisoner's maximum term is not a constitutionally-protected liberty interest that is inherent in the Due Process Clause. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979).

Moreover, the Pennsylvania Probation and Parole Act, 61 Pa. Stat. 331.1, *et. seq.*, does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole prior to the expiration of their maximum terms.[9] Accordingly, Plaintiff's due process claim based upon his alleged ineligibility for parole due to his lack of access to prescription programming, should be dismissed.

### e. Retaliation Claims

Plaintiff claims that many of the Commonwealth Defendants' alleged actions were done in retaliation for his filing of numerous grievances and lawsuits against them. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

---

[9]

See, e.g., McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993); Mickens-Thomas v. Commonwealth, Bd.. of Probation and Parole, 699 A.2d 792 (Pa. Commw. Ct. 1997) (parole is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy); Tubbs v. Pennsylvania Bd.. of Probation and Parole, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) ("it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term . . . the [Board] makes each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), appeal denied, 637 A.2d 295 (Pa. 1993).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;

> 2) he suffered "adverse action" at the hands of prison officials[10]; and

> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities.  Carter, 292 F.3d at 158.  "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.  In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, Plaintiff has alleged the following retaliation claims against:  (i) Defendant Satterlee, for unspecified actions, and Defendants Sobina and Huapt, for being aware of the alleged "retaliatory act" and doing nothing; (ii) Defendants Best and McKnight, for refusing Plaintiff toiletries and verbally harassing him, and Defendants Kennedy, Sobina, and Watson, for becoming aware of the alleged retaliation and doing "nothing to correct the wrong;"

---

10

To show an "adverse action," the plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225.  See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

(iii) Defendant Whitehead, for withholding a meal from Plaintiff in August 2007; and

(iv) Defendants Satterlee, Sobina, Heaster, Kennedy, and Bush, for denying him an "emergency telephone call" after his father was shot.

The Commonwealth Defendants argue that "the Amended Complaint contains no well-pleaded facts that would enable a court to infer more than the 'mere possibility of misconduct'" with regard to any of Plaintiff's retaliation claims. (Document # 78 at p. 20, citing Iqbal, 129 S.Ct. at 1950). The Court agrees, with regard to Plaintiff's First Third and Fourth retaliation claims.

Plaintiff's first retaliation claim merely alleges that "[w]hile [Plaintiff was] housed at SCI-Forest, Satterlee retaliated against [him] until [he] left for complaints that [Plaintiff] made against her." (Amended Complaint at ¶ 35). This is clearly insufficient to state a *prima facie* case of retaliation, as Plaintiff has failed to identify a single adverse action that Defendant Satterlee allegedly took against him. Thus, Plaintiff's purported retaliation claim against Defendant Satterlee should be dismissed, and his corollary claims against Defendants Sobina and Huapt regarding their alleged awareness of Defendant Satterlee's unspecified conduct should also be dismissed.

Plaintiff's third retaliation claim alleges that "when [Plaintiff] once complained about the meal [Defendant] Whitehead tried to serve [Plaintiff], he became angry and retaliated against [Plaintiff] by not contacting a supervisor and seeing that [Plaintiff] did not receive that meal on or about Aug., 2007." (Amended Complaint at ¶ 50). Thus, Plaintiff is essentially claiming that, in response to Plaintiff's complaint about one particular meal he was being served, Defendant Whitehead refused to give him any food for that meal. These allegations are also clearly insufficient to state a *prima facie* case of retaliation against Defendant Whitehead, and such claim should be dismissed.

Plaintiff's fourth retaliation claim alleges that "Forest staff (Satterlee) and others retaliated against [him] by denying an emergency telephone call to [him] after being notified that

41

[his] father had been shot several times at close range, and approx. 6 months after the death of [his] mother," and that "[Defendants] Sobina,... Heaster, Kennedy, and Bush allowed the retaliatory conduct." (Amended Complaint at ¶ 60). The initial problem with this claim is that Plaintiff fails to allege that he was engaged in any constitutionally-protected activity against which the named Defendants were allegedly retaliating. Moreover, the alleged denial of an emergency phone call is not the type of "adverse action" that would "deter a person of ordinary firmness from exercising his [constitutional] rights." As a result, Plaintiff's retaliation claim against Defendants Satterlee, Sobina, Heaster, Kennedy, and Bush should be dismissed.

However, Defendants' argument does not apply to Plaintiff's second retaliation claim. That claim states that "[d]ue to complaints [Plaintiff] made against DOC staff,... [Defendants] Best and McKnight retaliated against [him] by refusing him toothpaste, soap, toilet paper (etc.), and by loudly stating that [he] was a baby raper, rat, and homosexual." (Amended Complaint at ¶ 41). Thus, Plaintiff has alleged that (i) he was engaged in constitutionally-protected activity (filing complaints against DOC staff); (ii) Defendants Best and McKnight took adverse actions against him, which this Court finds would be sufficient to "deter a person of ordinary firmness from exercising his [constitutional] rights;" and (iii) the adverse actions were "due to" Plaintiff's constitutionally protected activity. This is sufficient to state a *prima facie* case of retaliation. At this stage of the proceeding, the Commonwealth Defendants have not put forth any argument or evidence to prove that they would have taken the same actions absent the protected conduct, for reasons reasonably related to a legitimate penological interest. Thus, their motion to dismiss Plaintiff's retaliation claim against defendants Best and McKnight should be denied.

Notwithstanding the foregoing, Plaintiff's corollary claim against Defendants Kennedy, Sobina, and Watson, alleging that they "became aware and did nothing to correct the wrong," fails to establish that such Defendants played an affirmative part in the complained-of misconduct of Defendants Best and McKnight. As a result, such claim against Defendants Kennedy, Sobina, and Watson should be dismissed.

## f. Prison Litigation Reform Act

The Prison Litigation Reform Act provides that:

> (b) Grounds for dismissal– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;  or  (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A.  Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so.  Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act codified at  28 U.S.C. §§ 1915A, 1915(e) and  42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory  provisions with respect to actions brought by prisoners who are proceeding in forma pauperis.  See 28 U.S.C. §1915(e)(2)[11].  Under this provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language.  See, e.g., Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim.").  In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See, e.g., Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under  28

---

[11]

Title 28 U.S.C. §1915(e)(2) provides:  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'").

As noted earlier, Defendants Leskinen, Fike, and Sileo have never been served in this case, nor has an attorney entered an appearance on their behalf. The docket indicates that these Defendants were added and/or identified as Defendants in the Amended Complaint that was filed in this case on October 22, 2009 [Document # 64]. Rule 4(m) of the Federal Rules of Civil Procedure requires that Defendants be served within 120 days of the date they are added as Defendants in a case. This did not occur with regard to Defendants Leskinen, Fike, and Sileo, and they should be dismissed from this case.

In addition, although named in the caption of the Amended Complaint, the following Defendants are not mentioned anywhere by name in the body of the complaint, nor are any specific allegations made against them: Defendants Zavada, Yates, Grandlund, Jolene B., Sutton, Ames, Delie, and Corbett. As a result, said Defendants should be dismissed from this case.

**III.    CONCLUSION**

For the foregoing reasons, it is respectfully recommended that:

1.    The Commonwealth Defendants' Motion to Dismiss Amended Complaint, or in the Alternative, Motion for Summary Judgment [Document # 77] be granted in part and denied in part, as follows:

   a.    The motion should be denied with regard to Plaintiff's Eighth Amendment claim against Defendants Kennedy, Sobina, Watson, Beard, and Woodard arising from the alleged stoppage of Plaintiff's medically prescribed/recommended toothpaste;

   b.    The motion should be denied with regard to Plaintiff's Fourteenth Amendment due process claim challenging the manner in which Plaintiff's disciplinary hearings were conducted; however, such claim should be allowed to proceed only against Defendants Joseph D., Weaver, Kerns-Barr, Mark, Moslak, Cross, Andrade, and McKissock, and should be dismissed as to Defendants Beard, Sobina, Barone, Heaster, Ennis, and Bush;

44

        c.      The motion should be denied with regard to Plaintiff's retaliation claim against Defendants Best and McKnight, regarding their alleged denial of toiletries to, and verbal harassment of, Plaintiff; however, Plaintiff's corollary claim against Defendants Kennedy, Sobina, and Watson, alleging that they were "aware" of the alleged retaliation, should be dismissed; and

        d.      The motion should be granted in all other respects.

2.      The Fayette County Defendants' Motion to Dismiss [Document # 79] be granted in part and denied in part, as follows:

        a.      The motion should be denied with regard to Plaintiff's First Amendment free exercise of religion claim against Defendants Chapman, Medlock, Croftcheck, and Waligura;

        b.      The motion should be denied with regard to Plaintiff's Eighth Amendment excessive use of force claim against Defendants Brownfield, Barker, Dunkard, and Matthews, arising from their alleged activation of a "stun belt" on Plaintiff; and

        c.      The motion should be granted in all other respects.

3.      Defendant Burnsworth's Motion to Dismiss [Document # 84] be granted, and that Defendant Burnsworth be dismissed from this case;

4.      The Motion to Dismiss filed on behalf of Defendants Poindexter and Sherbine [Document # 100] be granted, and that Defendants Poindexter and Sherbine be dismissed from this case; and

5.      Defendant Gregory Packaging's Motion to Dismiss [Document # 103] be granted, and that Defendant Gregory Packaging be dismissed from this case.

By virtue of the foregoing, it is also recommended that the following Defendants be terminated from this case, as the claims against them have been recommended for dismissal: Commonwealth, Gordon, J. Shaffer, Bush, Zullinger, Reisinger, Barone, Heaster, Dittman, Heberling, Skunda, Whitehead, T. Shaffer, Whiteko, Garofalo, Kelley, Grimm, Miller, Satterlee, Huapt, and Younkin.

It is further recommended that:  (i) Defendants Sileo, Leskinen and Fike be dismissed from this case for Plaintiff's failure to serve them within 120 days of the filing of the Amended

Complaint in accordance with Rule 4(m) of the Federal Rules of Civil Procedure; and

(ii) Defendants Zavada, Yates, Grandlund, Jolene B., Sutton, Ames, Delie, and Corbett be dismissed from this case due to Plaintiff's failure to mention them anywhere by name in the body of the Amended Complaint.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge


Dated: July 29, 2010

cc:     The Honorable Sean J. McLaughlin
        United States District Judge